Next case on this morning's docket is the Village of Freeburg v. C and S, Ltd. at all, consolidated with Village of Freeburg v. C and S, Ltd. at all. We have Mr. Kurt Blood for the appellant, and we have Mr. J. Brian Mannion for the appellee, and you may proceed, Mr. Blood. Thank you, Your Honor. May it please the Court. Now, for the audio record, my name is Kurt Blood. I represent C and S, Ltd. and Phil Sheets. And we're asking the Court to reverse the judgment of attorney's fees rendered under Section 11-31-1 of the Illinois Municipal Code. First thing I want to do is make sure the Court understands what the Village has done here, what the Village's position is here. The Village is saying all it has to do is file a complaint. File a complaint under Section 11-31-1, and it's entitled to attorney's fees. Does that statute require prior notice before a complaint is filed to the property owner? So it's not as if they filed a complaint out of the blue. They would have sent a notice in advance to the property owner and said, unless you take certain action within a period of time, then we'll file a complaint. No disagreement, Your Honor. Right. Okay. Go ahead. I want to make clear what the Circuit Court did in this case, what the actions were. And I'm going to go through all of them, but I'm only going to use one hand, and I'm reserving the thumb. I'm not going to need the thumb. First, allow, file the complaint. I mean, we think we filed them, but we don't. We submit them to the Court of Appeals. Second, set the case for trial. Third, dismiss the case with prejudice on the Village's motion. No trial. No evidentiary hearing. And fourth, award attorney's fees to the Village. There's no finding of any sort that any statute was violated on this property, on these properties. There's two properties, two cases. That any ordinance was violated, that the building was dangerous, unsafe in any way. No injunctions. Well, my clients were entitled to hold a keg around the property every night. There was never any injunction that they had been violating by doing that. Never an order that required my clients to demolish the property or tear it or enclose it. Never an order allowing the Village to do a full. This case just went basically straight from filing the complaint to attorney's office. What was the time frame between those two? Between the filing of the complaint and the award of attorney's fees? There were two award of attorney's fees. Was it pending a year and a half? Well, that's it. You know, Justice Stewart, you've only suffered through this whole argument once. But Justice Boehmer and Justice Chapman have suffered through it twice now. And in between the two sufferings, there was another order of attorney's fees. There was additional attorney's fees. So this thing's been going a long time. And I was not the trial attorney, and I am totally unprepared to answer that question. My point is the case was pending for quite a while, right? And there was litigation involved. And ultimately the case settled is what happened. Is that right? I hate to use that because it all came down to attorney's fees, and we wouldn't budge on it. But it was very vigorously defended. Were there negotiations back and forth from both sides? I don't want to mislead you, Your Honor. I mean, something prompted the city to dismiss the lawsuit, right? Was that because there were some negotiations? There were two problems. And there were petitions to demolish the building. One of them was demolished voluntarily. No word of court. The village didn't do it. Of course, there's a variety of reasons the building can be demolished. I don't know exactly why this one was. Well, my whole point in asking the question is if there were negotiations, could not and should not, in retrospect, the issue of attorney fees have been discussed? Well, that's why I hesitate to say the case was settled. They reached a status where they were prepared to go forward on attorney's fees, but that's about all I can say. The other problem was it was fixed. It didn't have to be demolished. I mean, there was a hole in the deck and some tuck board needed to be done. And the building was sold, the work was done, or at least the plan was submitted, we're going to do this work, and the village said, all right, signed off on that plan. So they settled, I would say, with the next element as far as what happened to the building. But attorney's fees, no, we never settled attorney's fees. I'd like to give you a simple yes or no, but I don't think I can. There were some negotiations in order to prompt the city to go ahead and dismiss. I'm just not comfortable with that. Okay. Go on. Let me ask a question, something you just said. Pertaining to these two consolidated appeals, one of the properties was voluntarily demolished, but the other one was not? That's correct. Is that correct? Okay. So one of these properties was never demolished? That's correct. Okay. And, again, I don't know why it was demolished. I mean, there's any number of reasons. These aren't Mr. Sheets' only properties. There's another case in front of the court that we argued last fall that involves 140 acres that the Department of Transportation took part in. And Mr. Sheets is a businessman. He owns a lot of real estate. And his particular reasons for demolishing this building I do not know. I'm sure it had to do with dollar signs. I couldn't tell you. You're saying it's possible it had nothing to do with the village filing a suit to force him to demolish it. That's what I'm saying. Right. The record's not even consistent with that. Right. Okay. I just don't know. The record doesn't explain why. Right. And neither does the trial court's order. And the trial court order attorneys' fees in the first instance, it's just order. It's a handwritten order. The trial court ordered him after the remand. It wasn't a remand. It was a dismissal, by the way. The case was dismissed but wanted jurisdiction by this court. And there again, there's no findings in the attorney's fees order between appeals as to that the buildings violated anything, that they were unsafe. There's just nothing in there. And what the judge said, the court of St. Clair County said, was the village filed for demolition. Part of the petitions were vigorously defended. You agree with that? Oh, yes. And it was on issues other than attorney fees too? Yes. Oh, yes. Absolutely. And, you know, I was thinking that they always say you can sue anybody for divorce. It doesn't even have to be someone of the opposite gender. Maybe that's not an appropriate example anymore. But sue anybody for divorce. I could sue anybody for divorce. And if I sue somebody for divorce that I'm not married to, I assume it's going to be dismissed. And if I come to my senses, it will be on my own motion. But I would think that at that point we couldn't go to attorney's fees. I would think there would have to be some kind of misreportage. There would have to be something like, oh, well, it was marriage. Well, you're entitled to dissolution. I mean, I just don't think we could go from filing a petition for dissolution to attorney's fees. How could we go from filing a petition for demolition to attorney's fees? Doesn't there have to be something happening in between? And this is the second of two issues in my brief, although I've come to believe, preparing for this argument, that it's a more important issue. And part of the reason I think that is the Subeda case, the city of McHenry v. Subeda case. And the village went out for quite a while in their brief, and I gave a short trip. And I ignored it in my initial brief, even though I knew about it. I mean, I read it and I thought this isn't going to make any difference. But you know what? I think I was wrong. I think it's a very important case. And I invite this court's attention to it. You see, in that case, the village, well, the court did not find that the village was entitled to demolition. And that's kind of why I tossed it off. I figured, well, it's not our issue. But in that case, the circuit court, this is read right out of the reporter. I didn't have time to put it in my notes. Made an express finding that upon the vacation of the property by the tenants, the building did not pose any public health hazard, and also stated that had tenants lived in the building as they had in the city initially filed the suit, the tenants would have been at risk. And that is the finding of the circuit court on which the second district said, well, then the city is entitled to attorney fees. That's the finding. Found the building was unsafe. We've got nothing like that here. We just don't have any. We have the petition vigorously defended. But like I said, if I file for dissolution against somebody I wasn't married to, I'll better be vigorously defended. No finding of unsafe. No finding of warrants violation. No finding of statutory violation. Just boom, attorney's fee. On this record, that's how it works. File a complaint. Who demolished the building? My client. And you're suggesting not because the city had filed a complaint for demolition? It just did it? Why did it do it then? Actually, no, I don't want to be misleading you. I'm saying the record doesn't say that. And we're assuming that it had no connection at all with the fact that the city filed a lawsuit for demolition? Well, as a point of law, yes. As a point of fact, no. We don't know. We just don't know. Your point is we can't assume anything either way about it. Yes. I'm saying that there's got to be a finding of some sort. And that's the only thing that distinguishes your case with the Savada case? Right. There's got to be some kind of finding. Right. Some injunction? I think an injunction would have done it. That's what it was in this case. And then entering the injunction? It's not circumstantial evidence that the city gave your client a notice that the building was in disrepair and that it was later on demolished? We can't assume that it did it because of that? Well, actually, I think if there had been an evidentiary hearing, that would have been evidence. But there wasn't, Your Honor. And there's a lot of other things that could have been evidence that weren't. If there wasn't any evidence, if there wasn't any hearing, just boom, you're dismissed. Voluntary. Now on to attorneys. You know what? I am troubled by the thought that this court might remand this case for another hearing. I'm very concerned about that. I would say that would be a second bite at the apple by the village. Actually, it would be the third bite at the apple because we made the same argument. What would be the purpose of doing that, of having a hearing since the building is already demolished? Well, I would agree with that. But, of course, there's the other building. One building is not demolished. What would be the purpose on the one building that's demolished of remanding this for a hearing, for the court to make findings that the building should be demolished, if it's actually demolished? Well, or should be fixed. Well, it can't be fixed if it's torn down already. What would be the purpose then? Well, I'm arguing against that. I'm arguing it shouldn't be. But I would guess that the purpose would be to give the city a third chance to prove that. They're entitled to attorneys. That's right. To get some sort of a finding in the record, which they very carefully avoided doing. I mean, they very carefully avoided asking for a chance to put the evidence on. They very carefully avoided putting the evidence on. But, like I said, Justice Fulmer, we were up here making the same argument. And we went back. And I thought, sure, at that point, that we're going to get evidence that the buildings were unsafe, the buildings were a violation of something. But the village isn't interested in that. Actually, the village, I don't think, is even interested in winning this. I mean, the attorney fees is just a change, change, change. And Mr. Sheets is persona non grata at City Hall. And, I mean, you can see that in the record and the other cases in front of this court. And it's two appeals, three appeals, eight appeals. They don't care. I mean, they think Mr. Sheets has got money, I guess, and we're just going to keep rolling these dice. We're just going to keep on going. I don't even think there's any percentage in the village winning this. If you send it back for remand, oh, boy, more fees. Which property was sold by Mr. Sheets? I'm afraid you'd ask that. I don't know if it's the— Demolished one or the other one? Oh, no, it's the other one. The other one. And it was sold with? It was when Mr. Sheets answered the complaint for demolition, that was an affirmative defense property that had been sold. I wish I could be more specific. No, that's definitely a time limit. Well, I think that even though the green light is still nice and bright, I think that I've gotten my points across. If I don't like being used to reading again, and if there are no questions, I'm going to reduce the torture to no. Thank you, Mr. Blood. You'll have the opportunity for rebuttal. Thank you so much. Mr. Mannion? I don't want to lose their glasses. It may have been the parties here prior to that. We'll just leave them there. We'll take care of it. May it please the Court, Mr. Blood. Your Honors, I'd like to start at first by perhaps answering some of the questions that were posed, because I was a part of this case throughout the trial process. There's two properties at issue. One is located at 409 West Washington, and for your reference, that's case 5-10-355. That property was the property that was eventually rehabbed. The timeline on that notice was sent to the defendant November 29, 2006, giving the 15 days required under the statute to repair or demolish the property. It also notified the defendant that if action wasn't taken, the village would institute a suit and would be seeking an attorney's fees. All of that's in the notice? All of that's in the notice, and the notice was attached to the complaint as part of the record. In the appendix, the notice isn't attached to the complaint, although it's referenced in the complaint. It's not your appendix, but anyway. Okay. The suit was not filed following that notice until April 2, 2007, so what, five months after the notice. During that time, I believe there were discussions back and forth for whatever relevance that has. That property at 409 West Washington was eventually sold in October of 2007 after there had been several hearings on motions to dismiss, motions for reconsideration on motions to dismiss. The defendant sold the property without any type of settlement agreement with the village. In fact, the village wasn't even aware that the property was sold until sometime after the fact at another court hearing in November of 2007. In fact, it was suggested to the village to dismiss that suit at that time, but the issue of attorney's fees which had been incurred up to that date was why the case was not settled and was not dismissed at any point. Now, the second case involves property at 2 South Monroe, and that's case number 5-10-357. The beginning part is the same timeline. The notice went out on the same date. The suit was also filed April 2, 2007. That one went through the same process of motions to dismiss and motions to reconsider, motions to dismiss, and so forth. An answer was filed, I believe, in that case in November of 2007, and the court set that case for trial on the petition for demolition, I believe, in February of 2008. Now, shortly within weeks prior to the trial date, the defendant voluntarily demolished the property, which was the action that the whole point of the petition for demolition was to get the property demolished. So, again, once that was done, the only issue was the village's claim towards attorney's fees up to that point, and those motions were filed then shortly after, I believe in February of 2008, because that was the only real issue. In both cases, the... Can we assume that the motions to dismiss and the motions to reconsider that were filed and all the other litigation was directed not solely towards whether or not attorney fees are appropriate in this manner, but to the open issue of whether or not the buildings ought to be demolished? Well, it went to the issue of the sufficiency of the petition. An issue had been raised about whether the 15-day notice was applicable to the particular owner. I believe the notice... On issues other than just attorney fees, then? Right. Okay. But, yeah, the attorney's fees issue wasn't even raised at that time. Okay. So in February, then, the case, the only issue left was the attorney's fees because the village had the position that the demolition statute, the purpose of it is that the municipal taxpayers aren't the ones that bear the cost of bringing properties that are dangerous and unsafe into compliance. It's the owner of the property. And I want to point out a few things about the actual statute itself. The first sentence of the demolition statute, 11-31-1, says municipality may demolish, repair, or enclose or cause the demolition, repair, or enclosure of the dangerous and unsafe buildings. And that's important because the court found that the remedial action was taken due to the village enforcing the demolition statute. Did the court make a specific finding of that? Yes, Your Honor. And that's in the, is it in a written order? Yes, that's in the order of August 11, 2008, paragraph 6. The remedial action with respect to the property was due in full or in part to the efforts of the plaintiff to enforce the provisions of the demolition statute. So at that point, when the motion was filed, the defendant was free to file a counter affidavit or request for a hearing because that was an allegation of the motion for attorney's fees and it was supported by an affidavit. That finding of fact is not at issue in this proceeding. The only issue raised is an issue of law, whether the statute allows, under these undisputed facts in the order, for the attorney's fees to be granted. Now, what the defendant wants to do is create a condition, which is not a part of the statute. The defendant wants you to create a condition that there has to be an order of demolition or an order requiring an owner to do some action to the property, and there is no condition for that in the act. The way these cases usually play out is one of three ways. The municipality either gets an order that allows them to go out and do their repair or demolition, the court orders the owner to do the demolition or repair, or at some point the owner voluntarily does what's necessary to bring the property into compliance. That's precisely what happened in the McHenry case. In the McHenry case, there was no order that the owner of that property do anything with respect to the property. There was an order that the property could not be occupied by tenants because it was dangerous and unsafe. Once the complaint was filed, that was when the owner snapped into action and started working to voluntarily bring the property into compliance. The trial court in the McHenry case did exactly what the defendant is now asking you to do, and that is to basically say attorney's fees don't apply because there was no order, and the McHenry court said no, the trial court was wrong in doing that, that was erroneous, and reversed it and remanded the case back to the trial court and said trial court, you have to look at what the attorney's fees were that were reasonably necessary to enforce the demolition statute. Getting back to the language of the statute itself, the statute contemplates that the municipality has to go to court before it can demolish or repair a property. It has to obtain an order from the circuit court. So the cost of demolition, as that term is used, has to include filing a lawsuit. A municipality can't just go out and raise a building on its own. So as that term is used in the statute, the cost of demolition incurred by the municipality has to include filing a suit, getting an order, and so forth. And again, there's really only two cases that I think are of any help on this issue. Besides the McHenry case, it's the city-approved case. Now that was before the demolition statute added the language that you could get court-cost attorney's fees and other costs related to enforcement. But where it's of use, it interpreted what was meant by that word demolition and cost of demolition. And it said as that term is used in the statute, it doesn't mean the literal meaning of demolition, which is the raising of a building. It means whatever is necessary to make the property safe again. So the precise issue there was does demolition include raising? Is it only raising a building, or is it raising a building and then removing rubble, debris, fixing sidewalks? They said, no, we're not going to narrowly construe the term demolition because that would still leave the property unsafe. But it also would leave the municipality, in that case, holding the bag, being responsible for this additional expense of cleaning up the rubble and fixing the sidewalks. And they said, no, the purpose of the demolition statute is to give a municipality the power to abate these nuisances. So the purpose of the statute would be frustrated if the municipality, in this case, Freeburg, was not allowed to be whole after enforcing the demolition statute. Again, I think one last point on the actual language. I think if demolition, if you can only get the cost of demolition, and demolition means only raising a building or removing rubble, adding the words including attorney's fees would mean that the only way you could get attorney's fees is if the attorney would be out there doing the raising and demolition of the building. And I don't think that construction was what the legislature intended for the statute to do. I think the clear intent was that if you go out and file suit and you enforce the statute, the owner is going to be responsible for all the municipal costs. And that's important now more than ever as municipalities around the state are faced with a budget crunch. So public policy requires that municipalities be able to get all these expenses. Otherwise, any time a suit is filed or they make any attempt to evade a nuisance property, there's a potential liability of thousands and thousands of dollars. That's all I have. Thank you, Your Honor. Thank you, Mr. Miller. Mr. Blatt, do you have a rebuttal? Thank you, Your Honor. On the Suveda case, I think that if you follow it, it says that you don't expressly need an order of demolition. I think you expressly need under Suveda an order requiring demolition or enforcing demolition or allowing demolition or any other remedies under Suveda. What Suveda seems to say, though, is that you've got to have a finding. So the Paragraph 6 where the court states that the remedial action with respect to the property was due in full or in part to the efforts of plaintiffs to enforce the provisions of the statute, that's not enough of a finding? I don't think it is, Your Honor. Justice Stewart, you asked about that, too. I think you've got to take it into context that it follows Paragraph 5 of that order, which is as to one building that it does. Paragraph 5 is different in two orders. One states my client voluntarily demolished the structure shortly before trial. The other states my client sold the building and the new owner submitted a rehab plan for the village to approve the plan. Then it says the remedial action was due in full or in part to the village's efforts to enforce the statute. Okay, but still the complaint for demolition is still just allegations. In fact, one of the buildings just needed a tuck point and a couple boards in the deck, and they petitioned for demolition. It's just allegations. You still don't have a finding that these buildings were unsafe, that they didn't pass code, that they were contrary to statute. You still don't have any findings about the demolition of the building. Well, if you read the McHenry case, it says the trial court ruled in favor of the defendant and against the city, declining to award the city statutory fines or attorney fees. In so doing, the trial court essentially reasoned that fines were not necessary in light of Zavada's cooperation and subsequent compliance. And that's specifically what the appellate court in McHenry reversed and said send it back down to them. Why is that different than our case? And I think that seals it. I do think. I'm glad you're looking at this, John, because when the second district turned to attorney's fees, they specifically turned their attention to Zavada's claim that Section 11-31-1 doesn't apply to that case, because the findings of the judge were against the manifest way of the evidence. And the judge and the appellate court wrote that the circuit court may have found that the premises were unsafe. This is, by the way, you see the 987 in the official reporter? This is the next previous paragraph. You see the 987? That's the middle of the paragraph. The paragraph before that. The appellate court is saying the circuit court made the findings, but they weren't unsafe. Well, Justice Chapman just pointed out some findings that were made in our court here, right? That work was done and that the village brought about remedial action. I agree with that. No way around that. We're just saying it doesn't change our position. Our position being never a finding of any sort of a violation, never any sort of a finding of unsafety. The judge just stood and said that. Well, they say that in self-finding the trial court, essentially reasoned that fines were not necessary in light of the defendant's compliance. That didn't talk about any factual issues. Well, that's on fines. And after fines, they go into attorney's fees. It's a law thing. I'm talking about page 986 of the official report. Okay. So you think fines and attorney fees should be treated separately then in this case? Well, they did. Yes. Okay. Well, to summarize, I think that's the difference between Cerveda and this case. That's why attorney's fees in Cerveda and not attorney's fees here. You've got a finding, the building's unsafe in Cerveda, and you don't have it here. You don't even have it implied. You just have a kind of skip, a little hopscotch open. Complaint is just an allegation. Anybody can file a complaint for anything. In this case, filed for demolition of a building that just needed a clutch point and a couple boards and a deck. The judge never found, never made a finding on which that hang was had on attorney's fees. Is there any, you know, I shouldn't be telling you, you should be telling me. You see so many statutes. Is there any other statute where you can just go straight from complaint to attorney's fees? Do we have anything like that? Thank you, Your Honor. Thank you, Mr. Blood, Mr. Mannion. We'll take the matter under advisement.